IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES S. DERITO and KIMBERLY DERITO, | ) ) ) | 2:19-cv-737 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Judge Marilyn J. Horan |
| WALMART STORES EAST, L.P., | ) ) ) | |
| Defendant. | ) | |

**OPINION**

Plaintiffs Charles S. and Kimberly DeRito bring suit against Defendant Walmart Stores East, L.P., alleging claims for negligence and loss of consortium in relation to a slip and fall in one of its stores. (ECF No. 16). Following the completion of discovery, Walmart filed the present Motion for Summary Judgment. (ECF No. 30).

For the following reasons, the Motion for Summary Judgment will be granted.

**I. Background**

In the early hours of January 20, 2019, it was snowing outside the Delmont, Pennsylvania Walmart. (ECF No. 31, at 1-2). Mr. DeRito testified that it was actively snowing a powdery white snow that was very slick. (ECF No. 32-1, at 11). Although snowplows were passing through the parking lot, the ground outside the store was wet and slushy. (ECF Nos. 32, ¶ 22; 34-9, at 7). The sidewalks were being salted, and weather mats and wet floor signs had been placed near the doors in the vestibule area at the front of the store, to alert customers that the entrance could be slippery. (ECF No. 34, at 4-5).

1

At approximately 6:48:59 A.M., one of the outer doors into the store became stuck in the open position. (ECF No. 32, ¶ 8). About twenty seconds later, a concerned customer noticed that the door was stuck open. (ECF No. 32, ¶ 9). The customer left the area to tell a Walmart employee about the malfunctioning door. (ECF No. 32, ¶¶ 9-10). Mr. DeRito testified that, from his review of the store video of the events, as he walked into the store, snow was swirling all over the place. (ECF No. 32-1, at 19). At 6:49:32 A.M., approximately thirty seconds after the door became stuck open, Mr. DeRito walked through the malfunctioning door. (ECF No. 32, ¶ 3). He walked through the door at an angle, placed one foot on the mat, and then, with his other foot, he stepped directly onto the ceramic tile floor. (ECF No. 32, ¶¶ 2-3). He did not first wipe his boots on the weather mats, even though he later testified that he understood the purpose of those mats. (ECF No. 32, ¶¶ 23-24). When he stepped onto the ceramic floor, he slipped, hitting his head on a steel pole at the entrance. (ECF Nos. 32, ¶¶ 2-3; 34-10, at 1). After his fall, Mr. DeRito sat on the floor for a moment and then stood back up again. (ECF No. 32-1, at 21).

About thirty seconds after Mr. DeRito's fall, at 6:50:04 A.M., the concerned customer, who had noticed the malfunctioning door, returned to the area along with a Walmart customer service manager. (ECF No. 32, ¶ 11). Upon arriving in the front vestibule area, the customer service manager inspected the door. (ECF No. 32, ¶ 14). The customer service manager testified that she did not know how the door became stuck open, but she presumed that excessive wind had caused the door to temporarily malfunction. (ECF No. 32, ¶¶ 13-14). She did not see salt or any other substance in the sliding door's track. (ECF No. 32, ¶¶ 13-14). After completing her inspection, the customer service manager pushed the door back into place on its track, which fixed the door. (ECF No. 34-9, at 12). Both the assistant manager and the customer service

manager testified that they had never known the door to become stuck open in such circumstance before this incident. (ECF Nos. 32, ¶ 15; 34-9, at 12).

The customer service manager who fixed the door then inspected the general area surrounding the incident. (ECF No. 36-2, at 2). She did not notice any snow or water in the front vestibule area where Mr. DeRito fell. (ECF No. 36-2, at 2). Also, she did not see any snow or any other issue with the floor that necessitated a call for maintenance. (ECF No. 36-2, at 2-3). And, none of the Walmart employees who investigated the incident mentioned anything in their incident reports about snow, ice, or slush being present on the floor in the front vestibule area. (ECF No. 34-9, at 35-38).

Mr. DeRito testified that at the time he walked into the store, snow was swirling all over the place. (ECF No. 32-1, at 19). He also testified that the parking lot and sidewalk near the entrance was wet and slushy. (ECF No. 32-1, at 21). From watching the video footage before and after his accident, Mr. DeRito testified that, during the time when the door was stuck open before he entered the store, snow was swirling into the store. (ECF No. 32-1, at 19). Mr. DeRito further testified that he believed that he fell when he slipped on "powdery snow" and a "baby powder" like substance that blew in through the malfunctioning door. (ECF No. 32, ¶¶ 4-5). Finally, Mr. DeRito testified that when he stood up after his fall, he dusted himself off. (ECF No. 32-1, at 21).

After he stood up, Mr. DeRito took photographs of the front entry with his cellphone. (ECF No. 34, at 3-4). There is visible snow, slush, or salt present in those photographs. (ECF No. 35, ¶ 19). Video footage of the front entranceway shows that nine customers entered the store before Mr. DeRito that morning. (ECF No. 34, at 11). The video footage also shows that no one from Walmart came to inspect or clean the front entrance for over an hour before Mr.

DeRito's fall. (ECF No. 35, ¶ 6). Mr. DeRito presented evidence that the Walmart safety manual instructs its employees to inspect and clean the store entrances at fifteen-minute intervals during inclement weather. (ECF No. 34, at 5).

Mr. DeRito alleges he suffered neck, head, hip, wrist, hand, thumb, and shoulder injuries as a result of his fall. (ECF No. 16, ¶ 17). He had surgery and physical therapy on his shoulder following his fall. (ECF No. 16, ¶ 17). The Amended Complaint raises claims for negligence and for loss of consortium. (ECF No. 16). Discovery is completed, and Walmart now seeks summary judgment as to both counts. (ECF No. 30).

## II. Legal Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.*

In reviewing and evaluating the evidence for a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

**III. Discussion**

Walmart seeks summary judgment on Mr. DeRito's negligence claim. (ECF No. 30). Walmart argues that Mr. DeRito cannot prove that there was any powdery snow present on the floor at the time of his fall. (ECF No. 30, ¶¶ 22, 28). Walmart also argues that because Mr. DeRito alleges that the snow blew in during the period of thirty-one seconds while the door was stuck open, the store lacked notice that a hazardous condition was present at the front of the store. (ECF No. 31, at 12-13). Thus, Walmart contends that because it had no duty regarding the slippery substance that allegedly blew in through the door, it should not be found liable for negligence. (ECF No. 31, at 13-14).

Mr. DeRito argues that a slippery substance was present on the floor at the time of his fall. (ECF No. 35, ¶ 19). He claims that Walmart had constructive notice of the hazardous condition because the store knew that it was snowing outside and knew that snow could potentially create a dangerous condition at the front entranceway. (ECF No. 34, at 10). He argues that because Walmart was put on notice, it owed a duty to protect its customers from hazardous conditions at the front of the store by inspecting and cleaning the entranceway, and because it breached that duty, Walmart should be held liable in negligence. (ECF No. 34, at 12).

As regards to Mr. DeRito's claim for negligence, under Pennsylvania law, "[a] prima facie negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006).

When a negligence claim is based on a dangerous condition on another person's land, the landowner's liability depends upon whether the plaintiff is classified as a trespasser, licensee, or

invitee upon the land. *Estate of Swift by Swift v. Ne. Hosp.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997). Relevant here, a business invitee is a person who is on the land by invitation of the landowner to conduct business on the property. *Emge v. Hagosky*, 712 A.2d 315, 317 (Pa. Super. Ct. 1998). A landowner owes the highest duty of care to any invitee on the property. *Estate of Swift*, 690 A.2d at 722. Here, both parties agree that Mr. DeRito was on the Walmart premises as a business invitee. As such, both parties also agree that Mr. DeRito was owed the highest duty of care by Walmart while he was on the premises.

Although a landowner owes a business invitee the highest duty of care, a landowner is not responsible for all injuries that occur on the premises. *Howard v. United States*, 2012 U.S. Dist. LEXIS 15817, at *13 (M.D. Pa. Jan. 3, 2012). Indeed, the fact that an accident occurred on the premises does not by itself establish negligent conduct. *Rubes v. Kohl's Dep't Stores, Inc.*, 2018 U.S. Dist. LEXIS 108919, at *5 (M.D. Pa. June 29, 2018). Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts for determining liability when an invitee is injured on the premises. *Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. Ct. 1992). Under Section 343,

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) Torts § 343 (Am. Law Inst. 1965).

As a threshold matter under Section 343 of the Restatement (Second) of Torts, the plaintiff must prove that a hazardous condition exists in a slip and fall case. *Carter-Butler v. Target Store*, 2016 U.S. Dist. LEXIS 20845, at *7 (E.D. Pa. Feb. 19, 2016). Here, Mr. DeRito testified that he slipped on powdery snow, a baby powder like substance, that was on the floor inside the entrance to the store. He also testified that swirling snow entered the store through a malfunctioning entry door. Walmart presented deposition testimony that inspections of the area immediately after Mr. DeRito's fall revealed no evidence of accumulated snow, slush, ice, or water. Such testimony may raise a question of fact as regards the existence of a hazardous condition at the time of the fall. However, considering the evidence and all inferences in favor of Mr. DeRito, the non-moving party, and for purposes of the present Motion for Summary Judgment, we will assume that Mr. DeRito did in fact slip on the powdery snow as he testified. In such case, we will assume he satisfies his burden of proof that a hazardous condition existed on the premises. In addition, there is no dispute that the entry door malfunctioned thirty-one seconds before Mr. DeRito entered the store. Accepting Mr. DeRito's testimony that snow was swirling into the store through the open door, the malfunctioning door also presented a hazardous condition on the premises. Therefore, assuming the evidence in favor of Mr. DeRito for purposes of this Motion for Summary Judgment, the malfunctioning door and the powdery snow on the floor were hazardous conditions.

Next, to prove his claim for negligence, Mr. DeRito must prove that Walmart had notice of the dangerous conditions. *Rubes*, 2018 U.S. Dist. LEXIS 108919, at *5. Actual notice exists if the landowner was warned about the dangerous condition. *Trojecki v. United States*, 2014 U.S. Dist. LEXIS 38166, at *29-30 (E.D. Pa. Mar. 21, 2014). There is no notice that Walmart had actual notice of either the malfunctioning door or of the powdery snow on the floor.

7

Alternatively, actual notice can also be implied if a plaintiff can prove that the dangerous condition is one that has frequently recurred on the premises. *Myers*, 606 A.2d at 929. "For actual notice to be imputed to a defendant on the basis of a recurring condition, however, such a condition must have recurred in a 'pervasive or obvious way.'" *Mack v. Pilot Travel Ctrs., LLC*, 2015 U.S. Dist. LEXIS 171400, at *25 (M.D. Pa. Dec. 22, 2015) (quoting *Farina v. Miggys Corp. Five & Six*, 2010 U.S. Dist. LEXIS 76786, at *7 (M.D. Pa. July 29, 2010)). Although a recurring condition can give a landowner actual notice, Mr. DeRito has not produced evidence to show that the door malfunction was a recurring condition at this store. Indeed, both the assistant manager and the customer service manager testified that they had not known this door to become stuck open in such a circumstance in the past. Because the malfunction was not a recurring condition, Walmart did not have actual notice that it might create a dangerous condition on the property during inclement weather.

In addition, the constellation of events leading to Mr. DeRito's fall occurred during an active snowstorm in windy conditions. The malfunctioning door, plus the intensity of the wind and swirling snow, as testified by Mr. DeRito, created a perfect storm of events where the powdery snow blew inside the store vestibule. There is no evidence of such conditions having occurred before. Therefore, the record does not support a finding that Walmart had actual notice by implication.

Mr. DeRito's Response to Walmart's Motion for Summary Judgment argues that the general snowy conditions provided sufficient notice to establish Walmart's duty to Mr. DeRito. Pennsylvania caselaw can support a finding that generally snowy conditions can create notice of hazardous conditions at the entrance of a business premises. *Bennett v. Dollar Gen., Inc.*, 2020 U.S. Dist. LEXIS 122799, at *9-10 (E.D. Pa. July 13, 2020). In addition, Mr. DeRito has

produced photos taken after his fall that demonstrate the presence of snow, slush, and salt on the mat and entrance to the store.  However, in this case, Mr. DeRito testified that he slipped on powdery snow that blew in through the malfunctioning door.  The usual hazard in snowy conditions involves either tracked-in snow or slush or water from melted snow.  While the photographs taken after the fall could establish a question of fact as to the existence of such in the entry vestibule, given the testimony of Mr. DeRito, the photographs are not relevant to the presence of a powdery snow on the floor where he fell.  Given the combination of events that created the powdery snow on the floor, the facts of this case do not support a finding of actual notice to Walmart.

Absent actual notice, constructive notice can also support a finding of notice sufficient to support a premises negligence claim.  "Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence." *Cox v. Walmart Stores E., L.P.*, 2008 U.S. Dist. LEXIS 66035, at *12 (E.D. Pa. Aug. 26, 2008).  For example, in cases involving spills at grocery stores, Pennsylvania courts have found that the length of time that a dangerous condition remained on the property is dispositive in determining whether the landowner had constructive notice of the dangerous condition.  *See Kujawski v. Walmart Stores, Inc.*, 2007 U.S. Dist. LEXIS 71261, at *11 (E.D. Pa. Sept. 26, 2007) (collecting cases where spills on the floor for periods of up to ten minutes do not impute constructive notice upon a landowner).

In the present case, as regards the hazardous condition of the malfunctioning open entry door, Mr. DeRito contends that, because the door was stuck open, powdery snow blew into the entry vestibule.  The malfunction of the door occurred only thirty-one seconds before Mr. DeRito entered the store.  There is no case that supports a finding of constructive notice where a

9

hazardous condition existed on the floor for such a short period of time. As such, Mr. DeRito has not presented evidence to establish any question of fact that Walmart had notice of the hazardous condition of the malfunctioning door.

As regards constructive notice of the hazardous condition of the powdery snow on the floor, Mr. DeRito testified that snow was swirling into the store through the stuck open door. Since the door was only open for thirty-one seconds before Mr. DeRito entered and fell, any such powdery snow that entered the store through the door was likewise not on the floor sufficiently long to establish any basis for a finding that Walmart had constructive notice of the dangerous condition. In addition, although not argued by Mr. DeRito, should there be a contention that the powdery snow was on the floor before the malfunction of the door, there is no evidence in the record to support such a contention. Further, there is no basis to establish any question of said fact because, in common everyday experience, powdery snow on an interior floor surface melts quickly. As such, snow on a floor in a powdery form would only remain that way for a very short period of time. Therefore, Mr. DeRito has not proven that Walmart had constructive notice of the powdery snow hazardous condition. Therefore, absent notice of the hazardous conditions, there is no duty upon Walmart in this case.

Although Mr. DeRito argues that Walmart breached the duty owed to Mr. DeRito by failing to inspect the front entrance for over an hour before his fall, such is immaterial based upon the facts in this case. Mr. DeRito specifically testified that he slipped on powdery snow that blew in through the broken door. Given the short time lapse between the door malfunction and Mr. DeRito's fall, it is immaterial that Walmart failed to inspect or clean the front entranceway during the one-hour period before his fall.

Mr. DeRito has not presented sufficient evidence to establish any question of material fact that Walmart had notice of the hazardous conditions. As such, his negligence claim fails for lack of duty. Walmart's Motion for Summary Judgment will be granted.

Lastly, because Mr. DeRito's negligence claim fails, his spouse, Kimberly DeRito's derivative claim for loss of consortium also fails. Walmart's Motion for Summary Judgment regarding Mrs. DeRito's loss of consortium claim will also be granted.

## IV. Conclusion

Based on the foregoing, Defendant Walmart Stores East, L.P.'s Motion for Summary Judgment will be GRANTED. A separate order, pursuant to Federal Rule of Civil Procedure 58, will follow.

DATE:  12/2/2020

Marilyn J. Horan
United States District Judge